IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK LAREAU,

                                OPINION and ORDER

             Plaintiff,

                                14-cv-611-bbc

    v.

CAROLYN COLVIN,
Acting Commissioner of Social Security,

            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Mark Lareau is seeking reversal and remand of a decision denying his claim for disability benefits under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge who decided his case concluded that plaintiff was severely impaired by degenerative disk disease of the lumbar spine (status post lumbar fusion) with facet arthropathy and fibromyalgia, but retained the residual functional capacity to perform limited sedentary work as an order clerk, surveillance system monitor and inspector, tester or sorter.

      Plaintiff contends that the administrative law judge erred in four respects: (1) he improperly rejected the limitations assessed by plaintiff's treating physician, Dr. Mark Hartlaub, and nurse practitioner Kelli Casper; (2) he did not provide good reasons for his credibility assessment; (3) he did not consider plaintiff's depression to be a severe mental impairment; and (4) he failed to account for plaintiff's fibromyalgia and obesity. Because

1

I agree with plaintiff that the administrative law judge did not provide an adequate explanation of his reasons for rejecting the limitations assessed by plaintiff's treating physician or finding plaintiff not entirely credible, I am granting plaintiff's summary judgment motion and remanding this case for further consideration.

The following facts are drawn from the administrative record (AR).

RECORD EVIDENCE

A.  Background

Plaintiff has a long history of back pain.  On November 4, 2009, he was admitted to Mercy Hospital, where he saw Dr. Gregory Love for low back and leg pain caused by degenerative disk disease of the lumbar spine, L4-5 and L5-S1.  AR 238.  Plaintiff complained of increasing pain, making his work increasingly difficult.  Id.  When plaintiff returned to Mercy Hospital a month later with continued complaints of back pain, Dr. Love performed a "facet injection bilateral L2-3, L3-4 and L4-5."  AR 240.  When this failed to decrease plaintiff's pain to any extent, Dr. Love gave him a lumbar epidural steroid injection at the L4-5 interspace on January 8, 2010.  AR 242.

Plaintiff continued to experience back pain over the next several months.  AR 244-56. On November 29, 2010, Dr. Christopher Strum performed surgery on plaintiff's lower back. AR 223-29.  For several months after his surgery, plaintiff continued to experience variable back pain and was slow to heal.  AR 373-75 and 384-85.  Because he was deconditioned, he began physical therapy in March 2011.  Id.; AR 280-331.  In April 2011, Dr. Strum's nurse,

Kelli Casper, noted that plaintiff was having trouble weaning himself off his narcotic pain medications and referred him to a pain center. AR 388-89. In October 2011, plaintiff reported that he felt as if he was making progress but that the pain kept coming back. He also reported having a flare up of pain after helping his parents move. AR 501. Plaintiff had 19 occupational therapy sessions between February and May 2012 and made poor progress. AR 562-88, 642-51. The occupational therapist recommended that plaintiff work no more than four hours a day. AR 651. Although plaintiff was employed as a plumber, he has not worked since his back surgery. AR 53.

On July 23, 2012, Dr. Jilaine Berquist diagnosed fibromyalgia and ordermedication to help plaintiff manage his pain. AR 536 and 550-54.

B. State Agency Opinions

On August 24, 2011, plaintiff was referred by the Disability Determination Bureau to Roger Gronau, Ph.D., for a mental status examination. AR 421. Dr. Gronau concluded that plaintiff had some difficulty maintaining concentration and attention and was experiencing "some depressive symptoms that are associated with his inability to live his life the way he is to because of the pain." AR 424-26. Dr. Granaubelieved that plaintiff's depressive symptoms were associated with his back pain and no change in his psychiatric symptoms could be expected. AR 426.

On August 29, 2011, Dr. Pat Chan completed a physical residual functional capacity assessment, finding that plaintiff could lift 20 pounds occasionally and 10 pounds

frequently; stand or walk for 6-hours a day; sit for about 6 hours a day; and stoop occasionally. AR 429-31. Dr. Chan also found that although plaintiff's "allegations regarding [his] symptoms and functions [were] partially credible," plaintiff was "able to perform more activity than he alleges." AR 436.

On August 30, 2011, Joan Kojis, Ph.D., completed a psychiatric review and found that plaintiff exhibited depressive syndrome characterized by sleep disturbance, decreased energy and difficulty concentrating or thinking. AR 437-46. Dr. Kojis noted that plaintiff had mild restrictions of daily activities, mild difficulty maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. AR 447. However, she found that the evidence did not establish that these symptoms caused plaintiff more than a minimal limitation in his ability to do any basic work activity. AR 448. Dr. Kojis also completed a mental residual functional capacity assessment on August 30, 2011. AR 451-53. Although she found that plaintiff had some moderate limitations in sustaining concentration and persistence, she concluded that plaintiff had no observable problems with concentration, attention and work pace and was capable of unskilled work. AR 453.

In February 2012, Esther Lefevre, Ph.D., affirmed Dr. Kojis's psychiatric assessment, finding that plaintiff could meet the basic mental demands of unskilled work. AR 522. Also in February 2012, Dr. Ronald Shaw reviewed Dr. Chan's medical assessment and agreed that plaintiff was capable of light exertion with no more than occasional stooping. AR 523.

C. Treating Source Opinions

In a May 16, 2012 letter, nurse Kelli Casper recommended that plaintiff work part-time hours; perform rare crouching, squatting or kneeling; occasionally push or pull up to 200 pounds; occasionally lift above the shoulders; occasionally reach to mid-level; and occasionally lift no more than 60 pounds from his waist to the floor. AR 528.

Plaintiff's treating physician, Dr. Mark Hartlaub, completed a functional capacity questionnaire on December 19, 2012. His diagnoses were lower back pain, neck pain, upper back pain, muscle spasm and periodic leg weakness. AR 602. Dr. Hartlaub determined that plaintiff was frequently experiencing pain severe enough to interfere with his attention and concentration. AR 603. He stated that pain or fatigue would require plaintiff to recline three to four hours during a work day and that he would need periods of walking to relieve pain. AR 604. Dr. Hartlaub concluded that plaintiff could occasionally lift 20 pounds and would be absent from work more than three times a month. AR 604-05. Additionally, Dr. Hartlaub stated that the pain caused plaintiff to be depressed but that he did not believe that "emotional factors" contributed to plaintiff's symptoms or functional limitations. AR 603.

Dr. Berquist completed a fibromyalgia questionnaire on March 6, 2013, stating that plaintiff was likely to be absent from work more than three times a month and would experience good days and bad days. AR 675. She stated that plaintiff's symptoms were frequently severe enough to interfere with his attention and concentration. AR 673. Additionally, Dr. Berquist wrote that plaintiff exhibited "depression as a symptom" but

5

noted that the depression did not contribute to the severity of plaintiff's symptoms. AR 672.

C.  Hearing Testimony

At a hearing held on January 9, 2013, plaintiff testified that his back problems started when he was a child and continue to deteriorate. AR 62. He explained that his back gets very tight, like "someone's standing on it." AR 66. In addition, plaintiff stated that "I have lots of leg problems, cramping, they basically stop working at times." AR 58. Plaintiff testified that his legs sometime prevent him from sleeping and feel like "they [are] getting beaten by bats." AR 68. He described his fibomyalgia as causing "[f]lu-like symptoms" and "little explosions all over." AR 69. He went on to explain that fibromyalgia restricts his movement and daily activities. Plaintiff testified that he takes daily medication that "brings the pain level down to a tolerable level." AR 65.

In addition to his physical limitations, plaintiff mentioned that he has memory problems. According to his testimony, his doctors believe that this could be caused by pain, his medications or fibromyalgia. In addition, plaintiff said he sometimes suffers from depression, "because I feel like my life is, you know, over." AR 59. Plaintiff went on to say that his depression comes and goes and that it is a "battle," but he would rather be back to his normal life. AR 60. However, when the administrative law judge followed up by asking whether his depression was something that prevented him from working or just something he was dealing with, plaintiff responded that it was "[s]omething I'm dealing with." Id.

Plaintiff also testified that he is not on any medication or undergoing any treatment for his depression. Id.

Plaintiff described his typical day as watching television, sitting in his recliner, going to the store and trying to walk around the block. AR 72. He testified that he can mow the lawn with a riding lawn mower but it was painful because the ground is uneven, causing him to shift from side to side. AR 71. Plaintiff testified that he has to take breaks while vacuuming and shaving because his arms and back will hurt. Id. He does not exercise except for occasional walks and trying to stretch as part of a physical therapy. AR 72. Plaintiff testified that he used to hunt but now has to stay close to his truck because he cannot climb a tree and has difficulty walking on uneven ground. AR 74. Last year, plaintiff shot a deer with his bow and field dressed it, but he needed his friend and another person to put it into his truck for him. AR 79. Plaintiff testified that he can no longer fish from a boat because of the rocking. AR 81.

### D. Commissioner's Findings

On March 17, 2011, plaintiff filed an application for disability insurance benefits, alleging disability beginning on November 25, 2010, because of degenerative disc disease in his back, fibromyalgia and depression. The claim was denied initially on August 30, 2011 and upon reconsideration on February 22, 2012. AR 97-100. Plaintiff filed a written request for hearing in 2012, and appeared and testified before an administrative law judge on January 9, 2013. AR 44 and 109.

The administrative law judge found that plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine and fibromyalgia. AR 21. He concluded that plaintiff was not severely impaired by his depression because it did not cause more than a minimal limitation in plaintiff's ability to perform "basic mental work activities." AR 21-22.

The administrative law judge determined that plaintiff had the residual functional capacity to perform limited sedentary work with a sit and stand accommodation, provided he is not off task more than 10 percent of the work period; occasional stooping and crouching; and frequent bilateral overhead reaching. AR 24. Although he found that plaintiff "offered credible testimony concerning the impact his impairments have on his daily functioning," the administrative law judge stated that plaintiff's allegation that he cannot do any work was inconsistent with his daily activities, physical examinations and recent magnetic resonance imaging and computerized tomography scan findings. AR 27-28. The administrative law judge concluded that plaintiff was unable to perform any of his relevant past work, but relying on the testimony of a vocational expert, he determined that plaintiff could work as an order clerk, surveillance system monitor and inspector, tester or sorter. AR 30.

OPINION

A. Treating Physician Opinions

1. Dr. Hartlaub

A treating physician's opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). Although an administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it. Id. In making his decision, the administrative law judge must build a logical bridge from the evidence to his conclusion. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). "An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." Hall ex re. Hall v. Astrue, 489 Fed. App'x 956, 958 (7th Cir. 2012). Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527).

The administrative law judge provided the following explanation for giving some but not controlling weight to the assessment of Dr. Hartlaub:

> [Hartlaub] offers restrictions more limiting that the objective medical evidence will support. Furthermore, the claimant's own report or daily activity shows

9

greater functionality than that assessed by Dr. Ha[r]tlaub. It is also worth noting that the claimant was referred to Dr. Hartlaub for pre-surgery clearance and hypertension management, not for specialized treatment of back or leg problems. (See Exhibit 2F/25; Exhibit 12F/2). Because this opinion is inconsistent with other substantial evidence, it is not given controlling weight.

AR 28. Plaintiff correctly argues that the administrative law judge failed to identify the specific restrictions and objective evidence to which he was referring and did not explain how the restrictions were "inconsistent with other substantial evidence." The administrative law judge also failed to identify the daily activities he believes show a greater functionality than that assessed by Dr. Hartlaub.

In his discussion of plaintiff's credibility, AR 27, the administrative law judge noted that plaintiff was able to walk outside everyday, mow the law, bow hunt and fish, cut branches with a saw and help his parents move. However, as explained in the next section of this opinion, he does not explain why these activities show that plaintiff is capable of full-time work. Finally, although the administrative law judge is entitled to consider whether Dr. Hartlaub has a relevant specialty, he also must consider other factors, such as the length, nature and extent of the physician's treatment relationship with plaintiff. As plaintiff notes, the administrative law judge failed to recognize Dr. Hartlaub's ongoing treatment relationship with plaintiff or to explain why Dr. Hartlaub was not qualified to provide an opinion about his functional capacity. AR 28.

In sum, because the administrative law judge did not adequately explain his reasons for rejecting the limitations assessed by plaintiff's treating physician, I must remand this case for further consideration. On remand, the administrative law judge should provide sound

reasons for rejecting the opinion of Dr. Hartlaub and evaluate the opinion using the checklist factors in 20 C.F.R. § 404.1527(c).

2. Nurse Practitioner Casper

The administrative law judge gave some weight to Casper's opinion but stated the following:

> I observe that she is not an acceptable medical source under the regulations (SSR 06-3p) and her conclusion that the claimant should not work full time is a determination reserved to the Commissioner of Social Security (SSR 96-5p). She offers weight restrictions for the claimant's return to work that exceed those contained in the residual functional capacity above, and thus do not further limit the claimant's occupational base.

AR 29. Even though the administrative law judge is correct that a nurse-practitioner is not considered an "acceptable medical source," 20 C.F.R. § 404.1413(d)(1), an opinion from such a provider is "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-3p. "With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." Id. For example, in this case, the record shows that Casper regularly saw plaintiff on behalf of Dr. Strum throughout 2011 and 2012. AR 373, 384, 389, 392, 490-94, 607-08 and 633. District courts have credited SSR 06-3p and found reversible error in cases in which an administrative law judge failed to consider the same factors that apply to acceptable medical

11

sources when considering the opinion of a nurse practitioner or physician assistant. Dogan v. Astrue, 751 F. Supp. 2d 1029, 1038 (N.D. Ind. 2010); Anderson v. Colvin, 2014 WL 4955297, *4 (W.D. Wis. Oct. 2, 2014) (Conley, J.); Brown v. Astrue, 2012 WL 6692139, *7 (N.D. Ill. Dec. 19, 2012).

Additionally, the administrative law judge did not credit Casper's finding that plaintiff could work only part-time because he believed that such a determination is reserved for the commissioner. AR 29 (citing SSR 96-5p). Although SSR 96-5p recognizes that the commissioner makes the final determination about such issues as whether an applicant is disabled and whether the applicant's residual functional capacity prevents him from working, nothing in the ruling prevents a medical source from stating an opinion on how many hours a day an applicant is able to work. In fact, the ruling states that "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR 96-5p at 2.

Therefore, on remand, the administrative law judge should evaluate Casper's opinion using the factors in § 404.1413(d)(1) and not discount it merely because she is not an "acceptable medical source." If the administrative law judge disagrees with Casper's assessment about plaintiff's ability to work only part-time, he should explain his reasoning and support his findings with substantial evidence in the record.

### B. Credibility Determination

A credibility determination must contain specific reasons for the finding and must be specific enough to enable to the claimant and a reviewing body to understand the reasoning.

Craft v. Astrue, 539 F.3d 668, 678 (7th Cir. 2008).  Although the administrative law judge found that plaintiff offered credible testimony about the "impact his impairments have on his daily functioning," he concluded that plaintiff's "allegation that he cannot do any work is not consistent with his array of daily activities, the objective findings on physical examination or the recent MRI study and CT scan findings."  AR 27-28.

With respect to daily activities, the administrative law judge noted that plaintiff was able to walk outside everyday, mow the lawn, vacuum, bow hunt and fish, field dress his own deer, cut branches with a saw and help his parents move.  Although an administrative law judge may consider a claimant's daily activities when assessing credibility, he must be careful not to equate the ability to do some activity with the ability to perform full-time work.  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily of living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.").  To be sure, plaintiff's more strenuous activities, if performed on a regular basis, would be a good reason for the administrative law judge to find that he had a relatively non-restrictive residual functional capacity.  However, there is no evidence that plaintiff hunts, fishes, field dresses deer, saws branches or moves furniture on a regular basis.

Plaintiff's testimony at the hearing indicates that the activities cited by the administrative law judge were not as extensive or demanding as the administrative law judge implied.  For example, plaintiff testified that he "tries" to walk around the block, AR 70; can

13

mow the grass with a riding lawn mower if he can stop and stand up to take breaks, AR 72; and can vacuum only if he takes breaks. Id. Although plaintiff shot and field dressed a deer on one occasion, he had a friend drag and pick it up. AR 80. Plaintiff sawed branches once in 2011, but he used a motorized saw to do so. AR 319. Merely referring to isolated activities in passing without analyzing what those activities mean in terms of the claimant's credibility or functional capacity is not enough to satisfy the minimal articulation requirement. Hamilton v. Colvin, 525 F. App'x 433, 438 (7th Cir. May 3, 2013) (unpublished opinion) (reference to plaintiff's "isolated recreational event" of driving to Kentucky insufficient to establish that plaintiff could sit for more than 20 minutes at a time on regular basis).

As with his analysis of the medical source opinions, the administrative law judge did not make clear why he believed that the physical examinations and scans contradicted plaintiff's subjective complaints. Although he cites 13 physical therapy treatment notes from March 2011 to May 2011, AR 316-34, he fails to explain how those reports refute plaintiff's allegations that he cannot work. The treatment notes contain some positive statements about plaintiff's making improvement, but the therapist noted that plaintiff's progress was slow and that he was often in pain. Further, plaintiff had 19 occupational therapy sessions between February and May 2012 and made such poor progress that the occupational therapist recommended that plaintiff work no more than four hours a day. AR 562-88, 642-51. Plaintiff's 2011 scans showed mild disk desiccation without evidence of disk herniation or spinal stenosis, AR 464, and mild disk bulge at multiple levels with findings of

degenerative disk disease. AR 489. However, the administrative law judge does not discuss what these findings mean, especially in light of subsequent treatment notes from various providers who noted that plaintiff had continuing pain and loss of function.

In addition, the medical evidence cited by the administrative law judge dates from 2011, before plaintiff was diagnosed with fibromyalgia in 2012. Although the administrative law judge notes plaintiff's fibromyalgia and discusses his symptoms, AR 26-27, it is unclear whether the administrative law judge gave this evidence any weight in reaching his credibility determination. For example, the administrative law judge does not address Dr. Berquist's 2012 opinion or say whether plaintiff's diagnosis affected his overall condition.

In sum, the administrative law judge erred in making his credibility finding because he failed to adequately explain his reasoning. On remand, he should avoid questioning plaintiff's credibly simply by listing isolated activities that the plaintiff can perform under some circumstances or with substantial rest breaks. If the administrative law judge believes that a particular activity is inconsistent with the medical evidence or a stated limitation, he should discuss it specifically and explain his reasoning. The same holds true for any physical examinations or scans that the administrative law judge believes show that plaintiff has a greater functional capacity than he describes. He also should take care to look at all of the medical evidence, including the most recent findings from 2012.

C.  <u>Depression as a Severe Impairment</u>

Plaintiff alleges that the administrative law judge erred in finding at step two of the sequential evaluation process that plaintiff's depression did not cause more than a minimal limitation in his ability to perform basic mental work activities. Although state agency physicians Dr. Granau, Dr. Kojis and Dr. Lefevre all noted that plaintiff's depression caused him at least some difficulty in maintaining concentration and attention, the administrative law judge stated that he gave those opinions little weight because plaintiff testified at the hearing that depression is "something he is dealing with" and not something that would prevent him from working. AR 22, 60. He also noted that there was very little mention of plaintiff's depression in the record and that plaintiff had not sought medication or other treatment. Plaintiff argues that his testimony is not inconsistent with the state agency physician findings and that the administrative law judge questioned him on this point until he received the answer he was looking for.

An administrative law judge does not have to give any particular weight to the opinions of non-treating physicians if the opinions conflict with other evidence in the record, including plaintiff's own testimony. <u>Filius v. Astrue</u>, 694 F.3d 863, 868-69 (7th Cir. 2012). However, I agree with plaintiff that his testimony does not amount to a clear admission that he is not severely impaired by depression. Although plaintiff agreed that he "deals with" his depression, he also testified that it results in memory problems and causes him to feel as if his life is over. AR 60. On remand, the administrative law judge should further explore this issue with plaintiff and consider whether plaintiff has any limitations related to his ability

16

to maintain concentration and attention. Further, the administrative law judge should keep in mind that SSR 96–7p prohibits the drawing of negative inferences from a claimant's failure to seek treatment without first considering explanations for the failure, including the inability to afford regular treatment. Myles v. Astrue, 582 F.3d 672, 677 (7th Cir. 2009).

### D. Obesity

Plaintiff contends that the administrative law judge erred by not considering his weight in determining whether he was disabled. Plaintiff did not claim obesity as an impairment and has not explained how his weight further impaired his ability to work. However, the parties agree that plaintiff's height and weight place him in the category of "obese." Dkt. #16 at 17 and #20 at 10.

Social Security Ruling 02-1p requires an administrative law judge to consider any limiting effects of obesity on plaintiff's overall condition, even if the claimant does not cite obesity as an impairment. Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) (citing Clifford, 227 F.3d at 873). A failure to explicitly consider the effects of obesity may be harmless error if the administrative law judge adopted limitations suggested by specialists and reviewing doctors who were aware of the condition. Id. at 736-37. Apart from vague references to plaintiff's height and weight, plaintiff's obesity is not discussed with any specificity in the record or at the hearing. None of plaintiff's treating providers discussed plaintiff's obesity, and there is no evidence that the state agency consultants were aware of his condition. Although the commissioner suggests that the administrative law judge and

state agency physicians "implicitly acknowledged" plaintiff's obesity when they reviewed his medical records documenting his height and weight, they did not specifically note obesity as a contributing factor to plaintiff's impairments.  Pepper v. Colvin, 712 F.3d 351, 364-65 (7th Cir. 2013) (finding harmless error when residual functional capacity assessment is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments).  As a result, it is not clear that the administrative law judge met the requirements of SSR 02-1p.  On remand, he should specifically address plaintiff's obesity.

ORDER

IT IS ORDERED that plaintiff Mark Lareau's motion for summary judgment is GRANTED and this case is REMANDED to defendant Commissioner of Social Security, pursuant to sentence four of 42 U.S.C. § 405(g).  Judgment is to be entered in favor of plaintiff.

Entered this 23d day of July, 2015.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge